# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL FLORES,<br><br>Petitioner,<br><br>v.<br><br>E. ROE, Warden,<br><br>Respondent. | CV F 02 5296 WMW HC<br><br>MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Document 26) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

PROCEDURAL HISTORY

On July 31, 1998, in the Kern County Superior Court, a jury convicted Petitioner of (1) second degree murder, in violation of California Penal Code section 187(a); and (2) conspiracy

to commit murder, in violation of California Penal Code section 182(a)(1) and 187(a). On September 16, 1998, Petitioner was sentenced to 15 years to life imprisonment.[1]

On March 4, 1999, Petitioner filed a notice of appeal. On May 10, 1999, while this appeal was pending, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. On June 7, 1999, the superior court denied the petition for lack of jurisdiction pending Petitioner's direct appeal.

On June 23, 1999, Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal. On June 24, 1999, the court consolidated the petition with Petitioner's direct appeal. On November 28, 2000, the court affirmed Petitioner's conviction and sentence, and denied the petition.

On December 6, 2000, Petitioner filed a petition for rehearing in the Fifth District Court of Appeal. On December 14, 2000, the petition was denied.

On January 2, 2001, Petitioner filed a petition for review in the California Supreme Court. On March 14, 2001, the petition was denied.

On March 4, 2002, Petitioner filed the instant federal petition for writ of habeas corpus in the United States District Court for the Central Division of California. On March 18, 2002, the action was transferred to this court.

Petitioner states the following grounds for relief: (1) conspiracy to commit murder conviction violates due process and equal protection; (2) conviction violates double jeopardy; (3) the admission of co-defendant's out-of-court-statement violated Petitioner's right to confront witness and cross-examine; (4) removal of an undecided juror violated due process and right to jury trial; (5) the prosecutor committed misconduct in closing arguments, violating Petitioner's right to a fair trial and due process; and (6) the jury instruction given for aider and abettor liability violated Petitioner's due process rights.

On July 25, 2002, Respondent filed a motion to dismiss the petition based on Petitioner's failure to exhaust his state court remedies. Petitioner did not file an opposition. On August 30,

---

[1] This sentence was imposed for the murder charge. Petitioner was also sentenced to 25 years to life imprisonment for the conspiracy charge, but the sentence was stayed.

2002, the court entered an order granting Respondent's motion to dismiss the petition and requiring Petitioner to inform the court whether he chose to withdraw the unexhausted claims or dismiss the action. The case now proceeds on the amended petition filed November 3, 2003. Pursuant to court order, Respondent filed an answer on January 20, 2004, to which Petitioner filed a traverse on February 20, 2004.

## LEGAL STANDARDS

### A. JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on March 8, 2002, after the enactment of the AEDPA, thus it is governed by its provisions.

### B. STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1174 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v.

Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

When the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

FACTS

State court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C.§ 2254(e)(1). In this case, the California Court of Appeals issued an opinion that stated the facts adduced at trial. Accordingly, this court hereby adopts the facts summarized by the Court of Appeal in its unpublished opinion issued in case number F031754.

DISCUSSION

A. SUFFICIENCY OF EVIDENCE

Petitioner contends that insufficient evidence supports his conviction of conspiracy to commit murder, thus his conviction violates the due process clause of the Fourteenth Amendment. Petitioner relies on the fact that the conspiracy conviction of his co-defendant was reversed on appeal, and argues that because this leaves him as the sole conspirator, his conviction must be reversed. Respondent disputes this contention.

The California Supreme Court summarily rejected Petitioner's claim that it should clarify the standard of proof to for conspiracy to commit murder. This claim was based on the same argument presented here, i.e., that because the Court of Appeal found that there was insufficient evidence to support his co-defendant's conviction, Petitioner's conviction must necessarily be reversed also. Because the California Supreme Court's opinion is summary in nature, this court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n. 3.

The Court of Appeal expressly rejected Petitioner's claim that there was insufficient evidence to support his conviction of conspiracy to commit murder, finding that there was sufficient evidence from which the jury could infer that Petitioner entered into a prior agreement to kill the victim. Unpublished Opinion in Case No. F033487 at 8 - 10. The court finds that nothing in Petitioner's present contention demonstrates that the Court of Appeal's analysis "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). As Respondent

explains, although Petitioner couches his argument in terms of sufficiency of the evidence, the essence of his contention is that his conviction must be reversed because there were inconsistent verdicts, or, specifically, outcomes on appeal. The Ninth Circuit has expressly rejected this argument. See United States v. Valles-Valencia, 823 F.2d 381, 381-82 (9th Cir.1987) (a person can be convicted of conspiracy even though the charges against all the other alleged conspirators have been dismissed). Accordingly, the court must conclude that this contention presents no basis for habeas corpus relief.

B. Double Jeopardy

Petitioner contends that the Constitutional prohibition against double jeopardy was violated in his case. Specifically, Petitioner claims that because the murder charge of which he was eventually convicted was first dismissed by the District Attorney's Office in 1995, he could not legally be re-charged with the same murder in 1998. He argues that the dismissal of the charges in 1995 was, in effect, an acquittal.

The Court of Appeal addressed this issue in the habeas corpus petition consolidated with Petitioner's appeal, holding as follows:

> Initially, appellant argues that the principle of double jeopardy barred his trial and subsequent conviction because the prosecution initially filed a juvenile petition against him and that petition was dismissed for insufficient evidence prior to the hearing.
>
> "The double jeopardy clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment , and article I, section 15, of the California Constitution, guarantee that a person shall not be placed twice 'in jeopardy' for the 'same offense.'" (*People v. Bright* (1996) 12 Cal.4th 652, 660.) A person is in legal jeopardy for an offense "'"when (1) placed on trial (2) for the same offense, (3) on a valid indictment or information or other accusatory pleading (4) before a competent court, (5) with a competent jury, duly impaneled and sworn and charged with the case; or, if the trial is by the court, it must be 'entered upon.'"'" (*People v. Beasley* (1970) 4 Cal.App.3d 617, 635.) "In animating this prohibition against multiple prosecutions, the Double Jeopardy Clause rests upon two threshold conditions. *The protections afforded by the Clause are implicated only when the accused has actually been placed in jeopardy. Serfass v. United States*, 420 U.S. 377 . . . (1975). This state of jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence." (*United States v. Martin Linen Supply Co.*

> (1977) 430 U.S. 564, 569, italics added.) "Jeopardy attaches in a juvenile delinquency proceeding "when the first witness is sworn at the adjudicatory phase of the jurisdictional hearing." [Citation.] *Thereafter*, a juvenile cannot be retried unless there is a mistrial. [Citation.]' (*In re Pedro C.* (1989) 215 Cal.App.3d 174, 180 . . .; *Breed v. Jones* (1975) 421 U.S. 519, 529-531 . . .; *Richard M. v. Superior Court* (1971) 4 Cal. 3d 370, 375-377 . . . .)" (*In re Carlos V.* (1997) 57 Cal.App.4th 522, 525, italics added.) In the present case, it is clear that the charge was dismissed prior to the adjudicatory phase. Therefore, jeopardy had not yet attached and Flores was not placed twice in jeopardy.

Unpublished Opinion in Case No. F033487 at 28 - 29.

The court finds that Petitioner has failed to carry his burden of demonstrating that the Court of Appeal's analysis "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). As Respondent argues, the cases cited by Petitioner are distinguishable because they each involve a finding of insufficient evidence after the taking of evidence had begun, i.e., after jeopardy had attached. See Hudson v. Louisiana, 450 U.S. 40, 41- 42 (1981). Accordingly, the court concludes that this contention provides no basis for habeas corpus relief.

C. Removal of Juror

Petitioner contends that the trial court violated his rights to due process and to a jury trial by removing a juror from the jury without sufficient cause. Respondent disputes this contention. Noting that the Court of Appeal declined to reach this issue, Respondent waives exhaustion. See 28 U.S.C. § 2254(b)(2) & (3).

Although the Court of Appeal did not reach the federal issues raised here, it did reach state law issues in connection with the removal of the juror. It described the factual scenario as follows:

> Just before the trial court was about to read the jury instructions, a juror (identified in the record as Juror No. 058848) approached the bailiff and told him that he

> was having "some difficulty with serving and deliberating in this case." The court asked the juror what his difficulty was and he stated that he did not think he could "say, you know, [appellant] is guilty or not guilty." When questioned further about what made him think he could not decide the case, the juror replied, "In a way I'm kind of confused of what the lawyers are saying, some of the words that they say I don't understand." He went on to explain that the attorneys were talking too fast for him to understand, and that he had a problem comprehending what they were saying. Furthermore, he pointed to the fact that he had difficulty understanding what the words "sustained" and "overruled" meant. Upon further questioning, the juror stated he did not think he would have a problem deciding factual issues and he stated he would not have a problem finding appellant either guilty or not guilty. However, he had a problem understanding all of the words being used during the trial and could not "grasp quite a bit of" the testimony.
>
> Defense counsel objected to removing the juror, expressing concerns that this juror added to the racial cross-section of the jury. In addition, counsel felt the juror did not want to have to confront the other jurors during deliberations with an unpopular position. The trial court stated the juror's inability to understand the testimony amounted to an almost "insurmountable problem" and excused Juror No. 058848 for cause. The court then seated alternate No. 1 in his place.

Unpublished Opinion in Case No. F033487 at 22- 23.

Juror No. 058848 was removed pursuant to California Penal Code Section 1089, which provides in part: "If at any time, whether before or after the final submission of the case to the jury, . . . a juror requests a discharge and good cause appears therefor, the court may order him to be discharged . . . ." The Court of Appeal found that the trial court had not abused its discretion in dismissing Juror No. 058848 for good cause under the statute. Unpublished Opinion in Case No. F033487 at 23 - 25. In Miller v. Stagner, 757 F.2d 988, 995 (9th Cir. 1985), the Court of Appeals for the Ninth Circuit held that the substitution procedure set forth in Penal Code Section 1089 "preserved the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments. Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970)." Further, the Ninth Circuit has held that, "on habeas review, a trial court's finds regarding juror fitness are entitled to special deference." Perez v. Marshall, 119 F.3d 1422, 1426 (9th Cir. 1997).

In the present case, the court finds that the trial court had good cause to excuse Juror No. 058848 because there were strong indications that he had not understood enough of what was presented at trial to properly participate in the deliberations. As Respondent stresses, the juror himself pointed out his comprehension problem to the court, and told the court that he could not grasp "quite a bit" of the testimony. The trial court had the opportunity to observe the demeanor of the juror and to question him. Finally , the Court of Appeal found that the trial court had not abused its discretion in finding good cause to remove the juror under the facially valid statute. Under these circumstances, and the special deference that this court must afford the decision of the trial court to remove a juror, this court finds no Constitutional violation in the trial court's decision to remove Juror No. 058848 for good cause.. Therefore, the court concludes that this contention provides no basis for habeas corpus relief.

D. Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct during closing argument that was so egregious that it violated Petitioner's right to due process. Although the Court of Appeal did not reach the Constitutional issue, it did explain as follows:

> Appellant argues that the prosecutor engaged in misconduct when he told the following story at the end of his reply argument.
>
> "You know, I oftentimes think of justice as being a little baby, a little infant. And I want you to think about something like this. Let's say you leave work or you leave the courtroom today and your car won't start to you have to walk home. And you are walking through a residential neighborhood and it is a nice day and you are walking along there is nobody around. It is a beautiful street. You come across a house, it is just roaring in flames You look and you hear coming from the flames the sound of an infant, a little baby, crying. Little baby justice. Okay. And you look up and down the street and you don't see anybody. Nobody can help you. So you know it is up to you as an individual to save that child, to save little baby justice. So what do you do? You pull your jacket up, you rush into that house. Now when you get in there it is hot, you don't want to be there, and there is smoke, there is flames, and there is fire, but you hear the cries of the baby calling out for you to com help it. And you work your way to a room. And as soon as you get to that room where you hear the noise of the child, what do you find, a defense attorney. He goes hey, what are you doing here? You say, I am trying to save justice. He goes, hey, first of all, saving justice in the case is not your concern.

And, secondly, there is no baby in here that you need to worry about. Now you know you can hear it. So you say, excuse me, and you go in there and you grab the baby and you pull it close and you run out knowing that you have save the baby. You have saved justice. [¶] Ladies and gentlemen, I can't hold Gabriel Flores guilty. Judge Randall can't. The Sheriff's Department can't. You know who can, you. You have the opportunity to save justice.

Appellant claims that the prosecutor's argument amounted to an attack upon the integrity of defense counsel, and this court "should simply reverse the judgment without any further inquiry, if only as the appropriate punitive measure." We decline to do so.

It is well-settled that prosecutorial misconduct violates the federal Constitution when the prosecutor engages in behavior that is so egregious that it infects the trial with such unfairness so as to make the conviction a denial of due process. (*People v. Hill* (1998) 17 Cal.4th 800, 819; *People v. Gionis* (1995) 9 Cal.4th 1196, 1214.) Under state law, a prosecutor engages in misconduct by using deceptive or reprehensible methods to persuade either the court or the jury, even if the conduct does not render the trial fundamentally unfair. (*People v. Frye* (1998) 18 Cal.4th 894, 969; *People v. Berryman* (1993) 6 Cal.4th 1048, 1072, overruled on other grounds in *People v. Hill, supra*, 17 Cal.4th 800; *People v. Price* (1991) 1 Cal.4th 324, 447.)

In order to preserve a claim of prosecutorial misconduct for appeal, the appellant must make a timely objection and request the court to admonish the jury. (*People v. Berryman, supra,* 6 Cal.4th at 1072;*People v. Price*, 1 Cal.4th at p. 447.) "Generally, in order to raise the alleged misconduct on appeal, the objection must be both timely and specific. [Citation.] Moreover, when defense counsel objects during trial but does not request an appropriate instruction or admonition in order to lessen the possible prejudicial effect on the jury, the asserted objection is waived for purposes of appeal. [Citation.]" (*People v. Pitts* (1990) 223 Cal.App.3d 606, 691-692.)

In the present case, appellant failed to object to the prosecutor's statement, and likewise failed to request that the jury be admonished. Therefore, we must find that his claims were waived. Anticipating such a finding, appellant claims that an admonition would not have been able to cure the harm caused by the misconduct, therefore making an objection unnecessary. (*People v. Hill, supra*, 17 Cal.4th at p. 820; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1030; *People v. Herring* (1993) 20 Cal.App.4th 1066, 1074.) We disagree.

> "A jury will generally be presumed to have followed an admonition to disregard improper evidence or comments, as '[i]t is only in the exceptional case that "the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions." [Citation.]' (*People v. Allen* (1978) 77 Cal.App.3d 924, 934-935 . . . .)" (*People v. Pitts, supra*, 223 Cal.App.3d at p. 692.)

Even if we were to assume the prosecutor's statement during closing argument constituted misconduct, appellant has failed to show that an admonition to disregard the statement could not have cured any harm from its making. Contrary to appellant's assertion, the statements were not so prejudicial that they could not have been cured by a timely admonition. Therefore, the claim is waived.

Unpublished Opinion in Case No. F033487 at 25 - 27.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2592 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54 (1989); See, also, Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 184 (1935). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S. 255, 260-61, 109 S.Ct. 1038, 1042 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32, 111 S.Ct. at 2554-55.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038,1043 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998, 112 S.Ct. 618, 620 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-

24, 111 S.Ct. 850, 857 (1991); James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 1835-37 (1984); Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569. A federal court may still consider a procedurally defaulted claim if the petitioner can demonstrate (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. Harris, *supra*, 489 U.S. 260, 262, 109 S.Ct. 1038 (1989).

Here, the California Supreme Court denied the Petitioner's petition for review without citation or comment. Thus, the court may "look through" the denial to the last-reasoned decision to determine the grounds for the denial. Ylst v. Nunnemaker, 501 U.S. at 801-06 (1991) ("where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). In this case, the last reasoned opinion was that of the California Court of Appeal, quoted above. The Ninth Circuit has held that the invocation of the contemporaneous object rule acts as a procedural bar to raising that claim in a federal habeas petition. See Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999)("We may not review his six other prosecutorial misconduct claims because Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome.); Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir. 1988) ("Errors at trial that are not preserved by contemporaneous objection and subsequent appeal to the state supreme court are barred in a collateral habeas corpus review, unless the petitioner can show cause and prejudice."). Here, the Court of Appeal cited the contemporary objection rule in denying Petitioner's claim of prosecutorial misconduct. Further, Petitioner fails to demonstrate cause for his failure to object to the prosecutor's comments. Accordingly, the court finds that he is procedurally barred from raising this claim in this petition.

E. Admission of Co-Defendant's Statements

Petitioner contends that the admission of the out-of-court statement of his co-defendant Ramirez violated principles of collateral estoppel because the jury in Ramirez' trial had found the statement untrue. Petitioner further contends that the admission of this statement violated his Sixth Amendment right to cross-examination and confrontation. Respondent disputes this contention and argues that it is procedurally barred.

As Respondent explains, in granting Respondent's motion to dismiss on August 30, 2002, this court found that Petitioner's claims regarding the admission of Ramirez's statement were unexhausted. Petitioner then brought the claims in a new state habeas corpus petition filed in the California Supreme Court on December 3, 2002. The California Supreme Court denied the petition on July 9, 2003, with citations to In re Waltreus, 62 Cal.2d 218 (1965) and Ex parte Dixon, 41 Cal.2d 756 (1953).

In Ex parte Dixon, the California Supreme Court held that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction. Ex parte Dixon, 41 Cal.2d 756, 264 P.2d 513, 514-15 (1953) (In Bank) (*citations omitted*). If the Dixon rule provides an adequate and independent state ground for the California Supreme Court's decision, the Petitioner" has defaulted procedurally on the affected claims and cannot raise them in federal court unless he shows cause and prejudice or a fundamental miscarriage of justice." Morales v. Calderon, 85 F.3d 1387, 1389 (9th Cir. 1996) (*citing* Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991)).

The Ninth Circuit has concluded that prior to 1998 a California court's evaluation of Dixon and its exceptions was not independent of federal law so as to bar federal review. See Park v. California, 202 F.3d 1146, 1152-53 (9th Cir.2000). The Court declined, however, to determine "whether Robbins establishes the independence of California's Dixon rule for the future." Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003). Nonetheless, the Court suggested that, for post-Robbins California Supreme Court denials, the analysis may be substantially different:

> The California Supreme Court has adopted in Robbins a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted.... The purpose of this approach was to establish the adequacy and independence of the State Supreme Court's future Dixon/ Robbins rulings and to indicate that a prisoner seeking collateral relief with respect to new federal claims no longer had any recourse to exhaust in the state courts.... Robbins is clear, however, that its new approach is prospective.

Park v. California, 202 F.3d 1146, 1152-53, 1152 n. 4. (9th Cir. 2000)(*citing*

______With respect to the Dixon rule, the Ninth Circuit has held that a relevant point of reference for assessing its application is the time at which the petitioner "had an opportunity to raise the claims on direct appeal." Calderon v. U.S. Dist. Ct. For E.D. of Cal., 103 F.3d 72, 75 (9th Cir.1996), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532 (1997). See also, Calderon v. Bean, 96 F.3d 1126, 1131 (9th Cir.1996), *cert. denied*, 520 U.S. 1204, 117 S.Ct. 1569 (1997) (evaluating the Dixon rule "at the time Bean filed his direct appeal"). Because the Dixon rule precludes collateral review of a claim that could have been brought on direct appeal, the procedural default, though announced by the California Supreme Court when the habeas petition is denied, technically occurs at the moment the direct appeal did not include those claims that should have been included for review. Fields v. Calderon, 125 F.3d 757, 761 (9th Cir. 1997). In this case, that moment is 1999, the year of Petitioner's direct appeal. Petitioner's procedural default therefore occurred in 1999, making it a post - Robbins default. It appears, therefore, that

the California Supreme Court's denial of Petitioner's habeas corpus petition in reliance on Dixon rested upon an independent state ground.

The Ninth Circuit explained as follows in Bennett v. Mueller, 322 F.3d 573, 582- 83 (9th Cir., 2003) as to the procedure for determining whether a state procedural rule is adequate:

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

In the present case, the state has adequately pled the existence of an independent and adequate procedural bar in the form of Dixon. Petitioner, however, has done nothing to demonstrate the inadequacy of the state procedural rule set forth in that case.

As stated above, a federal court may still consider a procedurally defaulted claim if the petitioner can demonstrate (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. Harris, 489 U.S. at , 262. In this case, the court finds that Petitioner has demonstrated neither cause for his default, nor a fundamental miscarriage of justice. Specifically, the court finds no merit in Petitioner's claim that the admission of the out-of-court statement of his co-defendant Ramirez violated principles of collateral estoppel. See Standefer v. United States, 447 U.S. 10, 22-25 (1980) (refusing to extend principle of non-mutual collateral estoppel to the criminal context). The court similarly finds no merit to Petitioner's claim that the admission of Ramirez' statement violated Petitioner's confrontation rights. See Bourjily v. United States, 483 U.S. 171, 183-84 (1987) (admission of a co-conspirator's hearsay statements is a firmly rooted exception to the hearsay rule); Padilla v. Ternhune, 309 F.3d 614, 618-19 (9th Cir. 2002)(admission of a statement

against penal interests made by an accomplice to a friend in a private setting sufficiently trustworthy to satisfy confrontation clause).

Accordingly, the court finds that this contention provides no basis for habeas corpus relief.

F. CALJIC 3.02

Petitioner contends that the trial court violated his Constitutional right to due process by giving CALJIC 3.02 to the jury. Specifically, Petitioner contends that CALJIC 3.02 relieved the prosecution of its burden of proof by directing and telling the jury that all three perpetrators had the same intent to kill the victim. He also contends that the instruction was inapplicable in this case because the principle who killed the victim did not participate in the predicate crime of assault.

For the same reasons set forth above as to Petitioner's contention regarding the admission of his co-defendant's statements, the court finds Petitioner's claims regarding CALJIC 3.02 are procedurally barred.

As to the issue of a fundamental miscarriage of justice, the court again finds no merit to Petitioner's arguments. Specifically, the court finds that, as Respondent argues, the Ninth Circuit has expressly rejected the argument that CALJIC 3.02 relieves the prosecution of its burden of proving all the elements of the crime. See Solis v. Garcia, 219 F.3d 922, 926-27 (9th Cir. 2000) ((“The California Supreme Court examined the exact issue before us, in *Prettyman,* and reached the same conclusion. See *Prettyman,* 58 Cal.Rptr.2d 827, 926 P.2d at 1027 (holding that CALJIC 3.01 and 3.02 which the judge also gave at Solis' trial "[do] not withdraw an element from the jury's determination or otherwise interject an impermissible presumption into the deliberative process") (internal quotation marks and citation omitted.”)). Furthermore, as

Respondent points out, Petitioner's claim that the instruction was inapplicable in this case because the principle who killed the victim did not participate in the predicate crime of assault is meritless. The instruction required that the person who committed the murder also be a "co-principal" in the assault. The jury was instructed that principles include those who directly commit a crime and those who aid and abet in the commission of the crime. Therefore, Petitioner's assertion that the principle who killed the victim did not "participate" in the predicate crime of assault, even if true, did not preclude him from being a co-principle in the assault.

Accordingly, the court concludes that this contention provides no basis for habeas corpus relief.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1) The petition for writ of habeas corpus is DENIED; and

2) The Clerk of the Court is directed to enter judgment for Respondent and to close this case.IT IS SO ORDERED.

**Dated: June 14, 2005** **/s/ William M. Wunderlich**

mmkd34 UNITED STATES MAGISTRATE JUDGE